United States District Court
District of Massachusetts

|  |  |  |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Michael David Scott, | ) | Criminal Action No. |
| | ) | 14-cr-10074-NMG |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises out of a petition for habeas corpus filed by Michael D. Scott ("Scott" or "petitioner") while incarcerated for various crimes including wire fraud, mortgage fraud, bank fraud and money laundering. The background of this case is set forth in detail in the Memorandum and Order of this Court entered March 27, 2020, (Docket No. 222) which allowed the government's motion for waiver of privilege. For purposes of completeness, however, the Court will provide a brief overview of the relevant facts.

I. <u>Background</u>

In May, 2015, Scott pled guilty before United States District Judge Richard G. Stearns to 62 counts of wire fraud, in

violation of 18 U.S.C. § 1343, bank fraud, in violation of 18 U.S.C. § 1344, and unlawful monetary transaction, in violation of 18 U.S.C. § 1957, for perpetrating a mortgage fraud scheme between 2006 and 2008 throughout the Boston area. Judge Stearns sentenced Scott to 135 months of imprisonment, which was affirmed on appeal. In June, 2018, Scott filed a § 2255 petition, alleging ineffective assistance of counsel and prosecutorial misuse of immunized information. That petition remains pending before Judge Stearns.

In 2014, while Scott's criminal case before Judge Stearns was pending, the government found evidence that Scott had committed additional wire fraud, in violation of 18 U.S.C. § 1343, between 2011 and 2013. The government filed new charges against Scott and that case was assigned to this session.

In late 2015, Scott entered into a plea agreement with the government pursuant to Fed. R. Crim. P. 11(c)(1)(C) ("C Plea"). If the C Plea had been accepted by this Court, Scott would have been sentenced to 12 months imprisonment, with 6 months to run consecutively and 6 months concurrently with the 135-month sentence imposed by Judge Stearns. The C Plea also provided for $49,000 in restitution but did not include attorneys' fees or interest for the victims.

In March, 2016, several victims filed a memorandum ("the Victims' Memo") urging the Court to reject the C Plea. The Victims' Memo sought a minimum consecutive sentence of 12 months and a restitution award that included attorneys' fees and interest.

The next day, the Court notified the parties of its intent to reject the C Plea. The Notice states that the proposed sentence and order of restitution were insufficient and that

> [a]ny consecutive sentence of incarceration of less than 12 months and any order of restitution that does not include a provision for attorneys' fees and interest is insufficient. Therefore, petitioner will be permitted to withdraw his plea of guilty and to proceed to trial.

In response, the parties negotiated another plea agreement that comported with the Court's expressed concern.

At the hearing originally scheduled for Scott's sentencing, the Court formally rejected the C Plea. The parties sought to submit the edited plea agreement to no avail because the Court had already rejected the C Plea. The alternatives then available were to request a postponement of the sentencing and try to negotiate a new plea agreement or to go forward with the sentencing without an agreement.

Scott and his lawyer had a private conversation, whereupon Scott agreed to proceed to sentencing without a plea agreement. The Court sentenced Scott to a term of incarceration of 41

months, all but 12 months of which was to be served concurrently with the 135-month sentence imposed by Judge Stearns.

At the conclusion of the sentencing hearing, but before the Court adjourned, Scott informed the Court that he had not seen the PSR and was not aware of the Victims' Memo. The Court verified that the Probation Department had disclosed the PSR to counsel. Defense counsel then confirmed that he had discussed the PSR and the "additional facts presented relative to th[e] charge" with his client. The Court accepted counsel's statement and adjourned. Scott promptly appealed his conviction and sentence to the First Circuit Court of Appeals, which affirmed both the conviction and the sentence.

In December, 2018, Scott filed a habeas petition pursuant to 28 U.S.C. § 2255 challenging the validity of his plea and his sentence. He alleges ineffective assistance of counsel on several grounds. Scott also filed a motion to disqualify the judicial officer assigned to this session pursuant 28 U.S.C. § 455(a).

In January, 2019, the government filed a motion seeking waiver of Scott's attorney-client privilege because of his ineffective assistance of counsel claim. In March, 2020, this Court allowed the government's motion, denied petitioner's motion for recusal and directed the government to respond to

Scott's § 2255 petition. The government filed such a response on July 3, 2020.

## II. Discussion

### A. Legal Standard

Section 2255 enables a prisoner in custody to move the court that imposed his sentence to vacate, set aside or correct the sentence if it was 1) imposed in violation of the Constitution or laws of the United States or by a court that lacked jurisdiction, 2) in excess of the maximum authorized by law or 3) otherwise subject to collateral attack. 28 U.S.C. § 2255(a); David v. United States, 134 F.3d 470, 474 (1st Cir. 1998). The petitioner bears the burden of establishing the need for relief in each of those circumstances. David, 134 F.3d at 474. To be entitled to relief under § 2255, the petitioner must present "exceptional circumstances" that make the need for redress "evident." Id. (citing Hill v. United States, 368 U.S. 424, 428 (1962)).

A § 2255 petition is procedurally defaulted and unreviewable on collateral attack when the petitioner has not presented the claim on direct appeal, lacks cause for failing to do so and suffered no "actual prejudice resulting from the error." Damon v. United States, 732 F.3d 1, 4 (1st Cir. 2013) (citing Bousley v. United States, 523 U.S. 614, 622 (1998)).

Likewise, petitioners may not relitigate issues that have previously been raised on direct appeal. Argencourt v. United States, 78 F.3d 14, 16 n. 1 (1st Cir. 1996).

Prevailing on a claim of ineffective assistance of counsel under the Sixth Amendment to the United States Constitution may provide a basis for habeas relief. Prou v. United States, 199 F.3d 37, 47 (1st Cir. 1999). Ineffective assistance of counsel requires a petitioner to demonstrate that 1) his representation by counsel fell below an objective standard of professionalism and 2) he was prejudiced by his counsel's substandard conduct. Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). The Strickland test is formidable:

> [J]udicial scrutiny of counsel's performance must be highly deferential [and] counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

Id. at 689-90; see also Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006) (noting that petitioner must show that his "counsel's choice was so patently unreasonable that no competent attorney would have made it") (internal citation omitted).

Pro se pleadings are held to "less demanding standards than those drafted by lawyers" and are read liberally on a motion to dismiss. Boivin v. Black, 225 F.3d 36, 43 (1st Cir. 2000). Even pro se litigants are, however, bound by the Federal Rules of

Civil Procedure. Janosky v. Mass. P'Ship for Corr. Healthcare, No. 15-cv-12929, 2017 WL 1164490, at *1 (D. Mass. Mar. 28, 2017) (dismissing plaintiff's complaint for failing to set forth any clear causes of action).

    **B. Analysis**

Scott seeks relief pursuant to § 2255 on grounds of ineffective assistance of counsel resulting from trial counsel's alleged failure: (1) to review thoroughly the PSR and Victims' Memo with him; (2) to object to this Court's allegedly improper intrusion in plea negotiations; (3) to advise Scott that by proceeding to sentencing without a plea agreement he could face a harsher sentence than the one outlined in the plea; (4) to bring to this Court's attention the government's alleged breach of the plea agreement; and (5) to move to dismiss the indictment for lack of subject matter jurisdiction. Scott also contends that the Court lacked subject matter jurisdiction over Count 5 of the indictment. The government opposes all of the grounds alleged for § 2255 relief.

    **1.    Failure to Review the PSR**

Scott first contends that counsel's failure to review the PSR and Victims' Memo with him constitutes ineffective assistance. As a preliminary matter, the record demonstrates that counsel reviewed the PSR with Scott prior to sentencing.

-7-

Counsel stated as much at petitioner's sentencing hearing and has submitted a sworn affidavit confirming the same. Even if Scott could demonstrate the counterfactual, he cannot meet Strickland's prejudice prong. See Strickland, 466 U.S. at 691-96.

On direct appeal, Scott argued that his conviction and sentence should be overturned because this Court proceeded with sentencing despite his claim that he was unfamiliar with the PSR and the Victims' Memo. The First Circuit accepted that Scott may not have been familiar with the substance of the PSR or the Victims' Memo but nonetheless held that any resulting error was harmless. United States v. Scott, 877 F.3d 42, 49-50 (1st Cir. 2017). It reasoned that Scott failed to demonstrate that the result in this case would have been any different if he had read and considered the relevant information in full. Id.

That reasoning applies with equal force here. Any error resulting from counsel's alleged failure properly to review the PSR and Victims' Memo with Scott is harmless because he presents no evidence that, had he reviewed the materials to his satisfaction, the result in this case would have been any different.

### 2. Interference with Plea Negotiations

Scott next claims that counsel was ineffective for failing to object to the Court's insertion of itself into plea negotiations. Here too, the First Circuit has already determined that any error was harmless.

Although the First Circuit acknowledged that this Court may have said more than was necessary in rejecting the C Plea, it found that such comments did not create the appearance of impropriety or affect any of Scott's substantial rights. See Scott, 877 F.3d at 48-49. Scott's ineffective assistance claims merely repackages arguments already rejected by the First Circuit. Those arguments fare no better here. See Argencourt v. United States, 78 F.3d 14, 16 n. 1 (1st Cir. 1996) (explaining that collateral review may not be used as a means of relitigating arguments rejected on direct appeal).

### 3. Consequences of Proceeding Without a Plea

Scott's third claim of ineffective assistance is that counsel failed to advise him that he faced a harsher sentence than that outlined in the C Plea by proceeding to sentencing without a plea agreement. Scott contends that if he had been informed of the possible consequences, he would have withdrawn his plea and proceeded to trial.

A guilty plea necessarily involves the waiver of certain constitutional rights. United States v. Gray, 63 F.3d 57, 60 (1st Cir. 1995). A plea is, therefore, valid only if it is "voluntary and intentional[]." Id. Fed. R. Crim. P. 11 was adopted to address voluntariness and intentionality concerns with respect to pleas by ensuring that a plea is entered (1) in the absence of coercion; (2) with an understanding of the charges; and (3) with knowledge of its consequences. Id. at 60. (citing United States v. Cotal-Crespo, 47 F.3d 1, 4-5 (1st Cir. 1995).

Petitioner contends that his plea runs afoul of Rule 11 because counsel failed to advise him that proceeding to sentencing without a plea could subject him to a harsher sentence than that outlined in the rejected C Plea. Petitioner's argument is unconvincing. The record reflects that counsel informed Scott of the possible consequences of proceeding to sentencing without a plea agreement. Counsel and Scott were provided time to consult confidentially prior to sentencing and counsel has stated under the pains and penalties of perjury that he advised Scott of the possible consequences of proceeding with sentencing without a written plea agreement.

Even if Scott could somehow demonstrate that counsel failed to inform him of the consequences, Scott cannot demonstrate that

he was prejudiced by such failure because he was advised of such consequences on several occasions by several other participants. First, by signing the C Plea, Scott acknowledged his understanding of the charges and the plea, including the maximum penalties he faced and the possible consequences of the Court rejecting the C Plea, which included a harsher sentence.  If that were not enough, Scott was informed by the Court at his change of plea hearing and again prior to sentencing that proceeding without a plea agreement could subject him to a harsher sentence.

Accordingly, Scott's claim of ineffective assistance for failure properly to advise him of the consequences of pleading guilty is unavailing.

### 4. Breach of the Plea

Scott next faults counsel for failing to inform the Court of the government's alleged breach of the plea agreement. Specifically, Scott contends that counsel was obligated to alert the Court that

> the government admitted that it was still bound to Scott's plea agreement and that the government was supposed to advocate for the sentence and penalties in the plea agreement regardless of the [C]ourt's rejection.

Scott's argument is without merit.  His baseless allegations that the government improperly colluded with the

victims and the Court to reject his plea is entirely unsupported.  The government was not involved in the preparation or filing of the Victims' Memo and the Court alone, exercising its discretion, determined that the C Plea was unacceptable.  To the contrary, after the Court rejected the C Plea, and under no obligation, the government attempted to negotiate a new deal with petitioner.  The C Plea was no longer viable and thus was not "breached" and counsel was not ineffective for failing to claim as much.

**5.    Subject Matter Jurisdiction**

Scott's final claim of ineffective assistance is based on counsel's failure to move to dismiss the indictment for lack of subject matter jurisdiction with respect to Count V: Wire Fraud.  Specifically, Scott contends that the indictment failed to allege the use of interstate wires in the furtherance of wire fraud as required to establish subject matter jurisdiction.

The wire fraud statute give federal prosecutors jurisdiction over frauds involving the use of interstate wires. United States v. LaMacchia, 871 F. Supp. 535, 541 (D. Mass. 1994).

As a preliminary matter, defense counsel did file a motion to dismiss on jurisdictional grounds which was withdrawn only

after petitioner entered into the C Plea. In any event, subject matter jurisdiction was properly alleged in the indictment.

Count 5 of the indictment charged wire fraud as follows:

> [T]he the defendant herein, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of material false and fraudulent pretenses, representations, and promises, did cause writings, signs, signals, pictures and sounds to be transmitted by means of wire communication in **interstate commerce** for the purpose of executing such scheme and artifice, to wit, electronic mail communications sent via the internet, as follows: . . . $36.00 transfer of funds by wire from Citibank checking account No. XXXXXX7719 to Bank of American account No. XXXXXXXX5875.
> (emphasis supplied).

The bolded language plainly demonstrates that the indictment alleged all elements of wire fraud, including the jurisdictional element of use of interstate wires. See LaMacchia, 871 F. Supp. at 541.

Scott nevertheless argues, relying on United States v. Gianelli, 585 F. Supp. 2d 186 (D. Mass. 2008), that the charges in the indictment were unconstitutionally vague and indefinite. Unlike the indictment in Gianelli, however, the indictment in this case identified the individuals involved and established a time frame of the alleged events. Id. at 192-94. Indeed, paragraph 41 of the indictment alleges

> On or about October 11,2013, SCOTT emailed to T.W. a false and fraudulent "Wire Instruction Confirmation" in order to falsely represent to T.W. that $ 36,000

-13-

       had been wired from SCOTT's Citibank checking account
       No. XXXXXX7719 to a Bank of America account No.
       XXXXXXXX5875 for the benefit ofT.W. In reality,
       SCOTT's Citibank checking account No. XXXXXX7719 did
       not contain a balance of $ 36,000 at any time relevant
       to the purported wire transfer SCOTT had represented
       to T.W. Rather, on or about October 15,2013, SCOTT
       caused only $ 36.00 to be wire transferred from his
       Citibank checking account No. XXXXXX7719 to T.W.'s
       Bank of America account No. XXXXXXXX5875.

Based on the specificity with which the government identified the wire fraud, which the government reviewed in detail at Scott's change of plea hearing, Scott's argument that the indictment was vague or indefinite is untenable.

The Court notes that Scott is correct that in the First Circuit, a guilty plea does not waive jurisdictional defects. Valuncia v. United States, 923 F.2d 917, 921 (1st Cir. 1991). As the government emphasizes, however, it may "admit[] even those allegations which form the factual predicate for federal jurisdiction." Id.  Accordingly, even if Count V of the indictment was deficient, petitioner may be deemed to have admitted the underlying facts alleged which include sufficient details to establish subject matter jurisdiction.

**ORDER**

For the foregoing reasons, the motion of petitioner to vacate his sentence pursuant to 28 U.S.C. § 2255 (Docket No. 201), is **DENIED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated September 10, 2020